R. Joseph Barton (Cal Bar No. 212340)
Peter Romer-Friedman (D.C. Bar No. 993376) *Pro Hac Vice to be Filed*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone:  (202) 408-4600
Email: jbarton@cohenmilstein.com

Matthew Z. Crotty (WSBA 39284, ISB 8653) *Pro Hac Vice to be Filed*
CROTTY & SON LAW FIRM, PLLC
421 West Riverside, Suite 1005
Spokane, WA 99201
Telephone: (509) 850-7011
Email: matt@crottyandson.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MUNOZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>INGENESIS STGi PARTNERS, LLC; STG INTERNATIONAL, INC.; and INGENESIS, INC.,<br><br>Defendants. | Case No: **'14 CV 1547 MMA BLM**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT, 38 U.S.C. §§ 4301-4335**<br><br>**EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(H)(1)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vanessa Munoz alleges, on behalf of herself and all others similarly situated, as follows:

## INTRODUCTION

1.      This is an action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*,

on behalf of a class of current and former employees of Defendants InGenesisSTGi Partners, LLC, STG International, Inc., and InGenesis, Inc., challenging Defendants' policies that penalize employees who take leave from employment to serve in the United States Armed Forces.

2.     First, Defendants have a policy or practice that requires employees who serve in the military to use their accrued Paid Time Off (PTO) for military leave concurrent with their military leave.  Second, Defendants permit their employees to take up to 40 hours of Leave Without Pay (LWOP) per year, but require employees who serve in the military to use their allotted LWOP to serve in the military once their accrued PTO is exhausted.  Third, once an employee who serves in the military has exhausted both his or her accrued PTO and allotted LWOP, Defendants' policy or practice subjects the servicemember-employee to discipline, including termination, for taking any further leave.  Defendants applied each of those policies to Plaintiff.

3.     Each of these policies or practices violates one or more provisions of USERRA and wrongfully denies the rights, benefits, and/or employment of Defendants' employees who serve in the Armed Forces.  As such, Plaintiff seeks a declaration that these policies or practices violate USERRA, an injunction barring Defendants from continuing these policies or practices in the future, and an order requiring Defendants to restore benefits, pay damages and/or offer reinstatement of employment to servicemember-employees who have been adversely affected.  Finally, Defendants hold themselves out to be "human resources" or "workplace solutions" specialists, make substantial revenues from defense contracts, give lip-service to their dedication to servicemembers, and, in the case of Plaintiff, were explicitly apprised of Plaintiff's right to take military leave.  In so acting, Defendants implemented and

1   ratified policies that directly contravene USERRA.  As such, these violations should

2   be considered willful and Defendants should be ordered to pay liquidated damages.

3                              **JURISDICTION & VENUE**

4        4.      Subject matter jurisdiction is conferred on this Court by 38 U.S.C. §

5   4323(b)(3), which provides that the district courts of the United States have

6   jurisdiction over a USERRA action brought against a private employer.  This Court

7   also has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because

8   this action arises under laws of the United States, and under 28 U.S.C. § 1343(a)(4),

9   because Plaintiff seeks to secure relief under an Act of Congress that protects civil

10  rights.

11       5.      Venue is proper in this district under 38 U.S.C. § 4323(c)(2) and 28

12  U.S.C. § 1391(b)(2).  All three Defendants are private employers, at least two of

13  which maintain a place or places of business in this District, and regularly employ

14  workers in this District.  Additionally, a substantial part, if not nearly all, of the events

15  giving rise to the claims in this action occurred in this District.

16                                   **PARTIES**

17       6.      Plaintiff Vanessa Munoz is, and has been, a resident of San Diego,

18  California her entire life except for the time that she was on active duty in the United

19  States military.  Ms. Munoz has served in the United States military since 2007.

20  Plaintiff served on active duty as a hospital corpsman in the United States Navy from

21  May 2007 until she was honorably discharged in April 2009.  Since her honorable

22  discharge, Plaintiff has served, and continues to serve, in the Navy Reserves.

23       7.      Defendant InGenesis STGi Partners, LLC ("InGenesisSTGi" or the

24  "Joint Venture") describes itself on its web site as a joint venture between InGenesis,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

Inc. and STG International, Inc.  The Joint Venture's headquarters are located at 6609 Blanco Road, Suite 300, San Antonio, Texas, 78216.  InGenesisSTGi is an employer within the meaning of USERRA § 4303(4)(A) because it paid the salary or wages for work performed by Plaintiff, and exercised control over Plaintiff's employment. Among other things, InGenesisSTGi entered into an employment agreement with Plaintiff, employed Plaintiff to work at the TRICARE Outpatient Clinic Claremont in San Diego, California, received Plaintiff's time sheets and tax documents, and paid Plaintiff for the work she performed.

8.     Defendant STG International, Inc. ("STGi") describes itself on its web site as a workforce solutions company.  The company has an office in Alexandria, Virginia, and has its West Coast regional office in San Diego, California.  STG International describes itself on its website as "a proud partner of MSEP [Military Spouse Employment Partnership]."  STG International employs approximately 1,700 people.[1]  Defendant STGi is an employer within the meaning of USERRA, 38 U.S.C. § 4303(4)(A), because it had control over the employment of Plaintiff and the Class. Among other things evidencing STGi's control over Plaintiff's employment, STGi's human resource staff handled most of the responsibilities related to Plaintiff's employment, STGi's Assistant Vice President of Human Resources signed Plaintiff's employment agreement, STGi's human resources staff communicated with Plaintiff about her military leave and other  personnel issues, and STGi human resource staff participated in the decision to terminate Plaintiff.  As one of the two owners of the

---

[1] http://www.bizjournals.com/bizjournals/beginners/2010/her-business-plan-for-stg.html?page=all

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

1  Joint Venture, STGi had control over InGenesisSTGi and exercised control over the

2  employment of InGenesisSTGi's workforce.

3      9.    Defendant InGenesis, Inc. ("InGenesis") describes itself on its web site as

4  a human resources company.  The company's headquarters are located at 6609 Blanco

5  Road, Suite 300, San Antonio, Texas, 78216, the same address as the Joint Venture.

6  Defendant InGenesis employs approximately 1,600 people.[2]  Defendant InGenesis is

7  an employer within the meaning of USERRA, 38 U.S.C. § 4303(4)(A), because it had

8  control over the employment of Plaintiff and the Class.  Among other things

9  evidencing InGenesis's control over Plaintiff's employment, InGenesis was involved

10 in the decision to terminate Plaintiff's employment.  As one of the two owners of the

11 Joint Venture, InGenesis had control over InGenesisSTGi, and exercised control over

12 the employment of InGenesisSTGi's workforce.

13 **CLASS ACTION ALLEGATIONS**

14     10.    Plaintiff brings this action as a class action pursuant to Rule 23 of the

15 Federal Rules of Civil Procedure on behalf of current and former employees of

16 Defendants InGenesisSTGi, InGenesis or STGi:

17     (A) who are or were required to use vacation leave, other annual leave, or

18     similar leave, including PTO or LWOP, during a period in which they served in

19     the military and were employed by one or more of the Defendants; or

20     (B) who were denied reemployment or terminated or subject to a policy by

21     which they would be denied reemployment or termination for using excessive

22     leave while serving in the military.

23

24     [2] http://www.hispanicbusiness.com/2013/7/10/ingenesis_among_fastest growing_staffing_firms.htm

11.     Excluded from the Class are the following persons: (a) all former or current employees who previously reached settlements with or judgments against Defendants resolving or releasing any claims arising during the Class Period under USERRA related to their use of leave during a period of military service, and (b) any person who had any involvement in adopting or implementing Defendants' policies regarding military leave.

**Impracticability of Joinder**

12.     The class is so numerous that joinder of all members is impracticable. Based on information on Defendants' own websites,[3] collectively Defendants had more than 3,200 employees in 2013.  Upon information and belief, based on the number of veterans in the country and Defendants' propensity to hire veterans and work under defense contracts, at least dozens, and likely hundreds, of current and former employees are members of the proposed class.

13.     Upon information and belief, the members of the Class are geographically dispersed throughout the nation.  According to a recent press release on Defendant STGi's web site, STGi "employs professionals in 40 states and territories, with offices across the country."[4]  According to InGenesis's website, the company currently posts job openings to hire employees in all 50 states.[5]  Upon

---

[3] http://www.stginternational.com/stg2/uploads/Press/MLee_Growth_Strategist.pdf (1700 employees); http://www.sawoman.com/marchapril-2014/profile/veronica-edwards-founder-ingenesis-and-entrepreneur available at http://www.ingenesis.org/AboutUs/MediaCenter.aspx.

[4] http://www.stginternational.com/stg2/uploads/Press/Service_Excellence_Awards.pdf

[5] http://corp.ingenesis.org/ApplicantsEmployees/Applicants/JobPostingOpenings.aspx

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

information and belief, Defendant InGenesis STGi Partners, LLC employs workers in many of the states in which its owners – InGenesis, Inc. and STGi – also employ workers.

**Commonality**

14.     The central questions in this case concern Defendants' policies or practices with respect to employees who take leave from Defendants to serve in the military and whether they violate USERRA.  Specifically, this case challenges Defendants' policies requiring employees to use Paid Time Off or other leave while serving in the military and Defendants' policy of refusing reemployment to or disciplining employees for using "excessive" leave without pay to serve in the military.  As a member of Defendants' human resource department admitted that Plaintiff was terminated pursuant to such a personnel policy, the answer to these questions will produce common answers.  To the extent that either of those policies is determined to violate USERRA, the remedy will be a formulaic one that restores such employees' leave, a formulaic calculation of back pay and requiring Defendants to allow the reinstatement of any such employees who were terminated pursuant to Defendants' policies.

**Typicality**

15.     Plaintiff's claims are typical of the other members of the proposed Class. Plaintiff challenges several personnel policies that Defendants implemented regarding its employees who took military leave.  Each of those policies was applied to and adversely affected Plaintiff.

16.     The relief sought consists primarily of a declaration establishing that Defendants' policies violated USERRA and remedies that necessarily flow from that

declaration to restore Plaintiff and the Class to the position that they would have occupied but for those illegal policies.

**Adequacy**

17.     Plaintiff will fairly and adequately protect the interests of other members of the Class.  Plaintiff is aware of no conflict with any other member of the Class. Plaintiff understands her obligations as a class representative, has already undertaken steps to fulfill them, and is prepared to continue to fulfill her duties as class representative.

18.     Defendants have no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Class.

19.     Plaintiff's counsel are experienced in federal court class action litigation, including pension and civil rights litigation, and have experience and expertise litigating USERRA class action cases.

**Rule 23(b)(2)**

20.     This action is properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

21.     Defendants are alleged to have violated USERRA in a manner as to all members of the Class.  As such, Defendants have acted or refused to act on grounds that apply generally to the Class.  As a result, final declaratory relief is appropriate respecting the Class as a whole.

22.     The monetary relief that Plaintiff seeks either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.

**Rule 23(b)(3)**

23.     This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

24.     The questions of law and fact common to the members of the Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.  By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether Defendants' policies violated USERRA and the remedy that should be provided under USERRA.

25.     Upon information and belief, there are no other pending lawsuits in which members of the Class have raised similar allegations involving this Plan.

26.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and at least two, if not all, of the Defendants conduct business in and have a significant presence this District.  As a result, a substantial part of the Class likely resides in this District.

27.     There are no difficulties in managing this case as a class action

## FACTUAL ALLEGATIONS

**Plaintiff's Background**

28.     Plaintiff Munoz joined the United States Navy in July 2007, attended hospital corpsman school and then served as a hospital corpsman in the United States Navy on active duty until November 2009.  Since November 2009, Plaintiff Munoz has been a hospital corpsman in the United States Navy Reserves in San Diego, California.

29.     From June 2012 until March 2013, Plaintiff worked as a Certified Medical Assistant for STG International, Inc. in San Diego.  At the request or decision of STG International, Ms. Munoz entered into an employment agreement with InGenesisSTGi on March 1, 2013.  Plaintiff was hired by InGenesisSTGi in part based on the recommendation of Plaintiff's supervisor at the Naval Branch Clinic, Kearny Mesa, who gave Plaintiff the highest rating of "excellent" in all 14 categories on Defendant InGenesis's professional reference form.

30.     From March 1, 2013 until her termination on September 30, 2013, Ms. Munoz worked as a Certified Medical Assistant for InGenesisSTGi at the TRICARE Outpatient Clinic Claremont in San Diego, California.  Plaintiff was terminated on the morning of the first day that she sought to return and/or returned to work from military leave.

**Defendants' Background**

31.     On their websites, in press releases, and to their employees, Defendants STGi and InGenesis represent that they support members of the military and veterans. For example, in a press release, Defendant STGi claims to have "always been a proud supporter of our U.S. military"[6] and claims on its web site that it is "proud to support active and Veteran members of our U.S. armed forces" and "will gladly work with military families."[7]  On their websites, both STGi and InGenesis tout

---

[6]http://www.stginternational.com/stg2/uploads/Press/STGi_Donates_Toys_for_Tots.pdf

[7] http://www.stginternational.com/stg2/pages/MSEP.asp

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

1   their philanthropy and connection to organizations that assist members of the military

2   or their families.[8]

3       32.   Defendants earn substantial revenues from contracts with the U.S.

4   military and the U.S. Government.  For example, on January 17, 2013, the Navy

5   awarded Defendant InGenesisSTGi a 60 month contract to provide physical therapists,

6   medical technologists, pharmacy technicians, and medical assistants to "the Naval

7   Medical Center in San Diego, Calif., and any associated branch clinic located in San

8   Diego County or San Bernadino County, California."[9]

9       33.   On its web site, Defendant InGenesis boasts that "since 2008 [InGenesis]

10  ha[s] been awarded contracts [with the U.S. Government] with aggregate lifetime

11  value in excess of $1 billion."[10]  In 2012, InGenesis won a share of a U.S. Department

12  of Defense $492-million, four-year multiple award contract to provide a range of

13  professional medical staff to Army, Air Force and Navy medical treatment facilities in

14  Washington, D.C.[11]  In 2012, InGenesis, Inc. announced that it was awarded a federal

15  contract with the U.S. Immigration and Customs Enforcement Health Services Corps.,

16  which was valued up to $249 million.[12]

17
18      [8] *E.g.*, http://www.stginternational.com/stg2/pages/MSEP.asp ("As a member of the Military Spouse Employment Partnership (MSEP), STGi is excited to expand our support to military families."); http://www.ingenesis.org/AboutUs/Philanthropy.aspx (offering "Military Heroes Medical Career Scholarships").

19
20      [9] http://www.defense.gov/Contracts/Contract.aspx?ContractID=4959

21      [10] http://corp.ingenesis.org/WorkforceSolutions/InGenesisGovernment Services.aspx

22      [11] http://www.prnewswire.com/news-releases/ingenesis-earns-portion-of-492-million-multiple-award-federal-contract-142979315.html

23
24      [12] http://www.mysanantonio.com/business/article/InGenesis-lands-249M-contract-3719936.php

34.     Based on information on its web site, a significant, if not the overwhelming, portion of Defendant STGi's business consists of contracts with the federal government, both civilian and Department of Defense.  For example, in 2010, STGi was awarded a contract with the Department of Veterans Affairs to manage a facility to provide health care service for veterans.[13]

35.     Upon information and belief, Defendant InGenesisSTGi also has significant contracts to perform services for the Department of Defense, including services at the facilities where Plaintiff performed services, and earns millions of dollars from government contracts with the Department of Defense.

**Defendants' Policies**

36.     In contrast to their public image as strong supporters of members of the military and notwithstanding that significant portions of their revenues are generated by contracts with the U.S. Government and the U.S. Military, Defendants maintain human resources policies that harm employees who take leave to serve in the U.S. Armed Forces.  Based on statements made to Plaintiff and records provided to Plaintiff, Defendants have a policy or practice of requiring their employees who take authorized military leave to serve in the U.S. Armed Forces to apply towards such military leave any Paid Time Off (PTO) and/or Leave Without Pay (LWOP), both of which are benefits that Defendants provide to its employees as a benefit or right of employment.

37.     According to their websites, Defendants provide their employees with a range of employee benefits or rights.  Among those benefits are Paid Time Off (PTO)

[13] http://www.stginternational.com/stg2/uploads/Press/CBOC_Open_House April_21_2010.pdf

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

and Leave Without Pay (LWOP).  PTO allows an employee to take leave from work and receive his or her ordinary compensation without any discipline or consequences. LWOP allows an employee to take unpaid leave from work without any discipline or consequences.

38.     For example, Plaintiff was entitled to accrue 8 hours of PTO for every 80 hours that she worked for Defendants that she could use at a later date.  In addition, Plaintiff was entitled to use up to 40 hours of LWOP each year.  Finally, Plaintiff was also entitled to receive 120 hours of paid military leave per year.

39.     Under Defendants' policy regarding military leave, employees who take leave to serve in the military are required to use their PTO earned to date as leave for their military service, and if they have insufficient PTO or once their PTO is exhausted, employees are required to use LWOP as leave for their military service. As a result of Defendants' policy, employees who take military leave lose the ability to use their PTO and/or LWOP during periods in which they are <u>not</u> engaged in military leave.  Additionally, as a result of Defendants' policy, employees who take military leave and exhaust all of their accrued PTO and LWOP are subject to discipline, including termination, or are refused reemployment for using all of their PTO and/or LWOP.

**Effect of Defendants' Policy on Plaintiff**

40.     During Plaintiff's employment, she was required to take military leave to complete training and military drills in the U.S. Navy Reserves on several occasions.

41.     Prior to taking military leave, Plaintiff sent her military orders and training duty sheets to her supervisor, Edna Collins, a Senior Nurse Officer at the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

clinic, and Elham Ramirez (aka Elle Ramirez), a human resources employee of Defendant STG International, Inc. in STGi's San Diego office.

42.     Plaintiff Munoz was instructed by Ms. Ramirez, a human resources employee of one or more of the Defendants with authority or responsibility regarding payroll, that employees were required to first use PTO and then use LWOP during periods of military leave.  Contrary to the emails that she received in response to her notification of her military leave, Plaintiff was informed that it was not an option for her to use PTO, but she was required to exhaust her PTO for military leave.  Plaintiff followed that direction and exhausted all of her PTO and LWOP during periods of military leave in 2013.

43.     Between March 1, 2013 and September 25, 2013, Plaintiff took the following leave:

| Dates | PTO Hrs. | LWOP Hrs. | "Hrs. Worked" | Requested Military Leave | Reason Stated on Timesheet |
|---|---|---|---|---|---|
| 3/18 | 5.5 | 2.5 | | | Back pain due to car accident |
| 3/28 | 7.75 | .25 | | | None |
| 4/3 | | 8 | | | None |
| 4/15 – 4/19 | | | 40 | Y | Reserve duty |
| 4/22 – 4/26 | | | 40 | Y | Reserve duty |
| 4/29 – 5/1 | | | 24 | Y | Reserve duty |
| 5/6 – 5/7 | | | 16 | Y | R[eserve] D[uty] |
| 5/8 – 5/9 | 16 | | | Y | None |
| 5/10 | 7.25 | .75 | | Y | None |
| 5/13 – 5/17 | | 40 | | Y | None |
| 5/20 | 4 | 4 | | Y | RD |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

| Dates | PTO Hrs. | LWOP Hrs. | "Hrs. Worked" | Requested Military Leave | Reason Stated on Timesheet |
|---|---|---|---|---|---|
| 5/21 | | | 0 | Y | RD |
| 5/22 – 5/24 | | 24 | | Y | RD |
| 5/27 – 5/31 | | 40 | | Y | RD |
| 6/3 – 6/4 | | 16 | | Y | Reserve duty |
| 6/5 | .50 | 7.50 | | | Reserve duty |
| 6/13 | | 8 | | | Sick / illness |
| 6/14 | | 8 | | | Sick / illness |
| 6/24 | 4.75 | 3.25 | | | None |
| 7/5 | 8 | | | | Requested |
| 7/11 | | 8 | | | Doctor's note [provided] |
| 7/23 | 8 | | | | Called off |
| 9/3 | 8 | | | | Sick / eye infection |
| 9/4 | 8 | | | | Doctor's note provided |
| 9/23 – 9/24 | 16 | | | Y | Military leave |
| 9/25 | 7 | 1 | | Y | Military leave |
| 9/26 – 9/27 | | 16 | | Y | Military leave |
| **Totals:** | 100.75 | 187.25 | 120.00 | | |

44.    As reflected by the above chart, the U.S. Navy activated Ms. Munoz and she engaged in military service from Monday, April 15, 2013 to Wednesday, May 1, 2013, and again from Monday, May 6, 2013 to Tuesday, June 4, 2013.  Prior to taking each of these periods of military leave, Plaintiff provided proper notice to her employer(s) pursuant to USERRA, 38 U.S.C. § 4312(a), and the human resources staff of her employer(s) acknowledged and approved her military leave.  After each of these periods of military leave, Plaintiff returned to work on a timely basis no later than the end date of her authorized period of military leave.

45.     For her military leave in April 2013, Plaintiff received payment for at least some of her military leave.

46.     Between Monday, September 23, 2013 and Friday, September 27, 2013, Plaintiff took leave from her employment to serve in the military.  Prior to taking this period of leave, Plaintiff provided proper notice to her employer(s) pursuant to USERRA, 38 U.S.C. § 4312(a), and human resources staff at her employer(s) acknowledged and approved her military leave.  At the conclusion of this period of military leave, Plaintiff attempted to return to work on a timely basis no later than the end date of her authorized period of military leave.

47.     Based on the employment records provided to Plaintiff by Defendant InGenesisSTGi after the termination of her employment, Plaintiff exhausted her PTO at least by September 25, 2013.  Based on the employment records provided to Plaintiff by Defendant InGenesisSTGi after the termination of her employment, Plaintiff also exhausted her LWOP by September 27, 2013.

48.     During the five-day period in which Plaintiff took military leave between September 23 and 27, 2013, Defendants' employees and/or agents, including Plaintiff's direct supervisor, Cory Traywick, the operations manager of InGenesis, and Marne Valeros, a program manager of STGi, decided that they would refuse reemployment to Plaintiff and/or terminate Plaintiff when she sought to return to work on September 30, 2013, at the conclusion of her authorized military leave.

49.     Consistent with Defendants' prior authorization of Plaintiff's military leave, on September 30, 2013, Plaintiff appeared at her workplace at the usual time and place at approximately 7:40 a.m. and sought to return to her position as a Certified Medical Assistant.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

50.     Shortly after arriving for work, at approximately 9:30 a.m. on September 30, 2013, Plaintiff received a phone call from Colby Jones, an Account Manager for STG International, Inc., or Marne Valeros, a program manager for STG International, Inc., both of whom work in the San Diego office.  Upon information and belief, Soraya Mains, a Jr. HR Generalist for InGenesisSTGi, who works in the Alexandria headquarters, was also on the telephone call.  On that telephone call, Plaintiff was told that Defendants were terminating her because she had exhausted her LWOP.  In response, Plaintiff reminded them that she had exhausted her PTO and LWOP because she had taken military leave.  When Plaintiff asked for a more detailed explanation as to why Defendants were terminating her, she was informed that Defendants' policy is to terminate employees who exhaust their LWOP, even if employees are on military leave when they exhaust their LWOP.  Plaintiff also inquired why her military leave had been approved if engaging in military leave would cause her to exhaust her LWOP and result in her termination.  Plaintiff does not recall receiving an answer to that question other than a response reiterating Defendants' policy.

51.     At the time that Defendants refused to reemploy Plaintiff and/or terminated her employment, Plaintiff had not used more than 40 hours of LWOP on days in which she was *not* engaged in military leave.  Thus, it was Plaintiff's taking leave to serve in the military from September 23 to 27, 2013 that caused Plaintiff's total amount of LWOP to exceed the 40 hour threshold that Defendants provided to Plaintiff as a right or benefit of employment.

52.     On October 9, 2013, Plaintiff requested from Defendants, via e-mail, a written explanation for her termination and/or the refusal of her reemployment by Defendants.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

53.     On October 10, 2013, Maribel Contreras, a human resources manager for STGi and InGenesisSTGi, informed Plaintiff, via e-mail, that "InGenesisSTGi's standard practice is to provide verbal separation communication and discuss verbal separation reasons.  No separation notices is provided."

54.     On October 11, 2013, Plaintiff asked Ms. Contreras for an explanation for her termination and/or the refusal of her reemployment for the purpose of her unemployment compensation application.  By e-mail on October 11, 2013, Ms. Contreras advised Plaintiff that she should to indicate "other" on her unemployment compensation claim form and to "elaborate on the [form by stating] exhausted LWOP."  In other words, Defendants' reason for terminating and/or refusing reemployment to Plaintiff was that she exhausted her LWOP and that Plaintiff should provide that reason to California unemployment compensation officials.

55.     Plaintiff filed a claim for unemployment compensation with the Employment Development Department of the State of California.  As instructed, Plaintiff Munoz identified the reason for her termination as "COMPANY STATES THAT I WENT OVER MY MAXIMUM OF 40 HOURS OF LEAVE WITHOUT PAY WHILE COMPLETING MY MILITARY OBLIGATIONS ASA [SIC] RESERVIST."  On behalf of InGenesisSTGi, Ms. Contreras responded to Plaintiff's unemployment compensation claim on October 30, 2013 by stating that "Per contract requirements, employee may not exceed LWOP over 40 hours per task order.  Employee exceeded LWOP 291 hours."

56.     In a letter dated March 20, 2014, Ms. Contreras, on behalf of InGenesisSTGi, stated to the California unemployment agency that:

InGenesisSTGi Parners holds a contract with San Diego Navy Ancillary. Per contract requirements the contract shall replace any healthcare worker who has been on LWOP status for a total of 40 hours per task order.

The following information is provided to detail the reason for the employee's separation from the company. The employee was discharged for violating the excessive leave without pay policy as dictated per the contract.

During the employee's six (6) month employment[,] the employee used the following leave time:

808 hours worked of the available 1184 hours

►     076.5 hours of PTO (personal time off, earned at 8 hours per 80 hours
     worked)
►     171.5 hours of LWOP (leave without pay)
►     120.0 hours of allotted Military leave time

Upon request of the client, the employee was requested to be removed from the contract for exceeding the LWOP policy. InGenesisSTGi did not have any other available position and separated the employee from employment service.

57.     Following the denial of her reemployment or her termination of employment on September 30, 2013, Plaintiff Munoz immediately began looking for other work, but did not find employment until December 16, 2013. Since December 16, 2013, Plaintiff has been employed at Borrego Community Health Foundation.

**Willfulness of Defendants' Acts, Practices & Policies**

58.     Defendants market themselves as human resources specialists. On its web site, Defendant InGenesis claims to have "achieved national recognition as one of America's fastest growing HR companies."[14] On its web site and in its press releases, Defendant STGi claims to be "a leading provider of . . . human capital [aka human resources], business management . . . services and solutions to federal defense and

---

[14] http://corp.ingenesis.org/AboutUs/Overview.aspx

civilian client."[15]  As human resources professionals, Defendants knew or were reckless in not knowing that their practices and policies described above, and as applied to Plaintiff, clearly violated USERRA.

59.     At the time of her termination, Plaintiff reminded Defendants that she had exceeded her LWOP because she had used her PTO and LWOP to serve in the military.  Plaintiff's claim for unemployment compensation explicitly stated that she "WENT OVER [HER] MAXIMUM 40 HOURS LEAVE WITHOUT PAY WHILE COMPLETING MY MILITARY OBLIGATIONS ASA [SIC] RESERVIST."  In her appeal on her claim for unemployment compensation on December 2, 2013, Plaintiff explained: "I WAS UNJUSTLY TERMINATED WHILE COMPLETING MY MILITARY OBLIGATIONS.  A LEAVE OF ABSENCE WAS COMPLETED FOR MILITARY LEAVE AND KNOWLEDGE OF MY ABSENCE WAS APPROVED PRIOR TO DEPARTURE."

60.     In light of Defendants' claimed expertise and Defendants' decision to maintain and implement the policy despite Plaintiff's explicit reminder that she had exceeded her leave because she was on approved military leave, Defendants' implementation of their policy was willful.

## COUNT I
### (Violation of USERRA, 38 U.S.C. § 4316)

61.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

---

[15] http://www.stginternational.com/stg2/uploads/Press/Service_Excellence_Awards.pdf

62.     USERRA, 38 U.S.C. § 4316(a), provides that (a) a person who is reemployed under USERRA is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed, and (b) subject to exceptions inapplicable here, a person who is absent from a position of employment by reason of service in the uniformed services shall be (1) deemed to be on furlough or leave of absence while performing such service; and (2) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

63.     USERRA, 38 U.S.C. § 4316(d), provides that an employer cannot require a person whose employment is interrupted by a period of service in the uniformed services to "use vacation, annual or similar leave during such period of service."

64.     During at least the time that Plaintiff worked for InGenesisSTGi, Defendants had a policy requiring employees who took military leave to use their PTO during their military service.

65.     By adopting, implementing and applying a policy requiring employees who took military leave to use vacation or other leave during their period of military service, Defendants have violated USERRA, 38 U.S.C. §§ 4316(a) and (d).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

**COUNT II**
**(Violation of USERRA, 38 U.S.C. § 4311)**

66.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.     USERRA, 38 U.S.C. § 4311, prohibits an employer from discriminating against any person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service with respect to, among other things, employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

68.     Based on the admissions of Defendants' employees, Defendants have a policy of disciplining and/or terminating employees who use what Defendants or its human resources employees deem to be excessive leave and/or leave without pay to perform military service.

69.     Plaintiff was refused reemployment and/or terminated on the first workday that followed her military leave and was told by Defendants that she was terminated for taking excessive leave without pay.  As the decision to refuse employment and/or terminate Plaintiff was made by and/or with the knowledge of Colby Jones, an Account Manager for STGi, Marne Valeros, a Program Manager for STGi, Soraya Mains, a Jr. Human Resources Generalist for InGenesisSTGi, and Cory Traywick, the operations manager of InGenesis, upon information and belief, a similar policy applies to the employees of the three Defendants in this action.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

70.     Based on the statements, actions and admitted policy of Defendants, Plaintiff's service in and obligation for service in the uniformed services was a motivating factor in Defendants' decision to refuse reemployment and/or terminate Plaintiff's employment.  Upon information and belief, based on the admitted policy of Defendants, Defendants have refused reemployment and/or terminated or taken other adverse action against other employees due to their service in the uniformed services.

71.     By terminating Plaintiff and adopting or applying this policy to any other members of the Class for using excessive leave without pay to perform military service, Defendants have violated USERRA, 38 U.S.C. § 4311.

## COUNT III
### (Violation of USERRA, 38 U.S.C. § 4312)

72.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

73.     Pursuant to USERRA, 38 U.S.C. § 4312, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits under USERRA so long as: (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer; (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; (3) the person serves honorably; and (4) with exceptions not applicable here, the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

74.     Plaintiff provided appropriate advance notice to her immediate supervisor, Edna Collins, a Senior Nurse Officer at the clinic, and to Elle Ramirez, a Program Management Assistant for STGi, of her service in the military for service in April, May and September, 2013.

75.     Immediately before the denial of her reemployment and/or her termination, Plaintiff's leave of absence from her employment for service in the military in September 2013 was less than a week.  And her total leave of absence for service in the military in 2013 was 41 workdays, or less than 330 hours.

76.     The next business day following her military leave in September 2013, Plaintiff reported to her employer for work; however, that morning Plaintiff was informed that she was terminated.

77.     Plaintiff was denied reemployment and/or terminated pursuant to a policy that prevents employees from taking excessive leave without pay, even if such leave is used to serve in the military.

78.     By denying reemployment and/or terminating Plaintiff and adopting or applying this policy to any other member of the Class for taking excessive leave to serve in the military, Defendants have violated 38 U.S.C. § 4312.

## COUNT IV
### (Violation of USERRA, 38 U.S.C. § 4313)

79.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

80.     USERRA, 38 U.S.C. § 4313(a), provides for persons whose period of service in the uniformed services is less than 91 days, subject to certain exceptions not

applicable here, that a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment in the following priority:

> (A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, the duties of which the person is qualified to perform; or

> (B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, only if the person is not qualified to perform the duties of the position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

81. On the next workday following the end of her military service in September 2013, Plaintiff attempted to return to work, but was immediately denied reemployment and/or terminated.

82. According to the statements by Colby Jones, of STGi, Marne Valeros, of STGi, Soraya Mains, of InGenesisSTGi, and/or Cory Traywick, the operations manager of InGenesis, Plaintiff was denied reemployment and/or terminated pursuant to a policy that prevents employees from taking excessive leave without pay, even if such leave is to serve in the military.

83. According to the statement by Maribel Contreras on behalf of InGenesisSTGi and STGi in connection with Plaintiff's claim for unemployment compensation, Plaintiff was denied reemployment and/or terminated pursuant to a policy that prevents employees from taking excessive leave without pay, even if such leave is to serve in the military.

84.    By denying reemployment and/or terminating Plaintiff and taking similar adverse action against any other member of the Class for taking excessive leave to serve in the military, Defendants have violated 38 U.S.C. § 4313(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and respectfully requests that this Court award the following relief:

A.    Declare that Defendants' policy or practice requiring employees to use vacation or other leave during the time that they serve in the military violates USERRA;

B.    Declare that Defendants' policy of refusing reemployment to or taking adverse action, including termination, against employees for the use of excessive leave to perform military service violates USERRA;

C.    Enjoin Defendants from enforcing any of those policies with respect to any employees in the future;

D.    Require Defendants to offer reinstatement to Plaintiff and any employee whose employment was terminated pursuant to any policy or practice that the Court determines violated USERRA, to provide such employees backpay for lost wages and benefits since their termination, and/or to allow such employees to elect to be reinstated with their leave (and other benefits) restored or have their vacation or other leave paid;

E.    Order Defendants to pay Plaintiff and the Class liquidated damages in an amount to be determined at trial, pursuant to 38 U.S.C. § 4323(d)(1)(C);

F.    Require Defendants to pay attorneys' fees and costs pursuant to 38 U.S.C. § 4323(h) and/or order the payment of reasonable fees and expenses in this

1   action to Plaintiff's Counsel on the basis of the common benefit and/or common fund

2   doctrine out of any money or benefit recovered for the Class in this Action;

3         G.     Order that Defendants are jointly and severally liable for any Order to

4   pay damages, liquidated damages, and/or attorneys' fees and costs in this action; and

5         H.     Grant such other and further relief as the Court deems proper, just and/or

6   equitable.

7   **JURY DEMAND**

8         Pursuant to Federal Rule of Civil Procedure Rule 38 or any similar rule or law,

9   Plaintiff demands a trial by jury for all causes of action and issues for which trial by

10  jury is available.

11

12  Dated: June 26, 2014          COHEN MILSTEIN SELLERS & TOLL
    PLLC

13

14            By: _____

15                    R. Joseph Barton Cal Bar No. 212340
                      Attorney for Plaintiff

16

17

18

19

20

21

22

23

24

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT