R. JOSEPH BARTON, CA Bar No. 212340
Email:  jbarton@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW
West Tower Suite 500
Washington, DC 20005-3955
Tel:  (202) 408-4600
Fax:  (202) 408-4699

MATTHEW Z. CROTTY
Email:  matt@crottyandson.com
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 409
Spokane, WA 99201
Telephone:  (509) 850-7011

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| VANESSA MUNOZ, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INGENESIS STGi PARTNERS, LLC; STGi INTERNATIONAL, INC.; and INGENESIS, INC.,<br><br>Defendants. | Case No:  14CV1547 MMA BLM<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Judge:              Hon. Michael M. Anello<br>Complaint Filed   June 26, 2014<br>Pre-Trial Conf.   May 23, 2016<br>Trial Date:          June 21, 2016 |

# **TABLE OF CONTENTS**

Page(s)

I. STATEMENT OF MATERIAL FACTS ..................................................................... 1

    A.    Ms. Munoz's Joint Employment With Defendants.................................... 1

    B.    Ms. Munoz's Military Leave ...................................................................... 1

    C.    Defendants' Requirement of Exhausting Paid-Time Off Prior to
           Using Leave Without Pay .......................................................................... 2

    D.    Defendants' Termination of Ms. Munoz for "Exceeding the Leave
           Without Pay Policy" While Away for Military Service ............................ 3

         1.    Defendants Knew That Ms. Munoz Had Taken Less Than
               40 Hours of Non-Military LWOP............................................... 3

         2.    The Navy Requested a Plan of Action, Not Termination................ 4

         3.    Defendants Fired and Refused to Reemploy Ms. Munoz
               Upon Return From Military Leave ................................................. 6

         4.    Defendants Failed to Consider Other Options............................... 8

II. STATEMENT OF POINTS OF LAW ................................................................. 10

    A.    Defendants' Liability as Joint Employers................................................ 10

    B.    Evidence That Defendants Required Ms. Munoz to Use PTO to
           Take Military Leave Remains Relevant Despite Dismissal of
           Count I .................................................................................................... 11

    C.    Plaintiff's Discrimination Claim Under USERRA § 4311 ...................... 12

         1.    Plaintiff's Burden of Proof .......................................................... 12
               a.    Ms. Munoz's Protected Military Status and Activity.......... 12
               b.    Defendants' Adverse Employment Action ......................... 13
               c.    Ms. Munoz's Protected Status or Activity as a
                   Motivating Factor .............................................................. 13
          2.    Defendants' Burden of Proof........................................................ 17

    D.    Plaintiff's Claim Under USERRA § 4312 for Denial of Her Rights

i

to Reemployment ........................................................................... 19

E.      Plaintiff's Claim Under USERRA § 4313 for Denial of an
Appropriate Reemployment Position ........................................ 21

III. RELIEF SOUGHT ........................................................................... 23

IV. ABANDONED ISSUES ................................................................... 26

V. EXHIBITS ...................................................................................... 26

VI. WITNESSES ................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arroyo v. Volvo Grp. N. Am., LLC,*
   805 F.3d 278 (7th Cir. 2015) ................................................................ 17

*Brown v. Prairie Farms Dairy, Inc.,*
   872 F. Supp. 2d 637 (M.D. Tenn. 2012) .............................................. 20

*Campbell v. Catholic Cmty. Servs. of W. Wash.,*
   No. C10-1579RSL, 2012 WL 600696 (W.D. Wash. Feb. 22, 2012) ............... 17

*Conners v. Billerica Police Dept.,*
   679 F. Supp. 2d 218 (D. Mass. 2010) .................................................. 11

*Cooper v. Hungry Buzzard Recovery, LLC,*
   No. C11-0280-JCC, 2011 WL 5299422 (W.D. Wash. Nov. 4, 2011) .............. 21

*Davis v. Crothall Servs. Grp., Inc.,*
   961 F. Supp. 2d 716 (W.D. Pa. 2013) .................................................. 21

*Deets v. Massman Const. Co.,*
   No. 15-1411, 2016 WL 403442 (7th Cir. Feb. 3, 2016) ....................... 10, 14

*Erickson v. U.S. Postal Serv.,*
   571 F3d 1364 (Fed. Cir. 2009) ..................................................... 14, 18

*Fryer v. A.S.A.P. Fire & Safety Corp., Inc.,*
   658 F.3d 85 (1st Cir. 2011) ................................................................ 24

*Fryer v. A.S.A.P. Fire & Safety Corp., Inc.,*
   680 F. Supp. 2d 317 (D. Mass. 2010) .................................................. 16

*Gerlach v. Wells Fargo & Co.,*
   No. C 05-0585 CW, 2005 WL 6792423 (N.D. Cal. June 13, 2005) ............... 11

*Godwin v. Hunt Wesson, Inc.,*
   150 F.3d 1217 (9th Cir. 1998) ........................................................... 14

*Jordan v. Air Products & Chemicals, Inc.,*
   225 F. Supp. 2d 1206 (C.D. Cal. 2002) ........................................... 19, 20

i

*Leisek v. Brightwood Corp.*,
  278 F.3d 895 (9th Cir. 2002) .................................................................*passim*

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...........................................................................11

*Mathews v. Chevron Corp.*,
  362 F.3d 1172 (9th Cir. 2004) ............................................................11

*Maxfield v. Cintas Corp. No. 2*,
  427 F.3d 544 (8th Cir. 2005) ..............................................................18

*McMillan v. Dep't of Justice*,
  812 F.3d 1364 (Fed. Cir. 2016) ................................................14, 15, 18

*v. Standard Oil Co.*,
  452 U.S. 549 (1981)...........................................................................13

*Patton v. Target Corp.*,
  No. 03-CV-1722-BR, 2007 WL 894560 (D. Or. Mar. 21, 2007) .....................15

*Petty v. Metro. Gov't of Nashville-Davidson Cnty.*,
  538 F.3d 431 (6th Cir. 2008) ..............................................................23

*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989)...........................................................................14

*Reed v. Honeywell Int'l, Inc.*,
  No. CV07-0396-PHX-MHM, 2009 WL 886844 (D. Ariz. Mar. 31, 2009), *as amended* (Apr. 27, 2009) ...................................................................18

*Robins v. Spokeo, Inc.*,
  742 F.3d 409 (9th Cir. 2014) ..............................................................11

*Robinson v. Morris Moore Chevrolet-Buick, Inc.*,
  974 F. Supp. 571 (E.D. Tex. 1997) .......................................................14

*Serricchio v. Wachovia Secs. LLC*,
  658 F.3d 169 (2d Cir. 2011) ...............................................................24

*Sheehan v. Dep't of Navy*,
  240 F.3d 1009 (Fed. Cir. 2001) ................................................14, 15, 17

*Tamosaitis v. URS Inc.*,
    781 F.3d 468 (9th Cir. 2014) ...........................................................................19

*Tourgeman v. Collins Fin. Servs., Inc.*,
    755 F.3d 1109 (9th Cir. 2014) .........................................................................11

*Trans. World Airlines, Inc. v. Thurston*,
    469 U.S. 111 (1985) ..........................................................................................24

*United States v. Nevada*,
    817 F. Supp. 2d 1230 (D. Nev. 2011) ........................................................10, 24

*United States v. Nevada*,
    No. 3:09–CV–00314–LRH–WGC, 2012 WL 1517296 (D. Nev. Apr. 30,
    2012) ....................................................................................................20, 21, 22

*Vega-Colon v. Wyeth Pharm.*,
    625 F.3d 22 (1st Cir. 2010) ..............................................................................18

*Velazquez-Garcia v. Horizon Lines Of Puerto Rico, Inc.*,
    473 F.3d 11 (1st Cir. 2007) ..............................................................................18

*W. Dist. Council of Lumber Prod. & Indus. Workers v. Louisiana Pac. Corp.*,
    892 F.2d 1412 (9th Cir. 1989) .........................................................................12

*Williams v. Sysco San Francisco, Inc.*,
    No. C 10-03760 MEJ, 2011 WL 6140970 (N.D. Cal. Dec. 8, 2011)...........18, 19

*Z Channel Ltd. P'ship v. Home Box Office, Inc.*,
    931 F.2d 1338 (9th Cir. 1991) .........................................................................12

**STATUTES**

38 U.S.C. § 4303(4)(A) ...........................................................................................10

38 U.S.C. § 4303(9) ................................................................................................22

38 U.S.C. § 4312(a) ................................................................................................19

38 U.S.C. § 4312(d)(1)(A) .......................................................................................20

38 U.S.C. § 4323(d)(1)(C) .......................................................................................24

38 U.S.C. § 4323(d)(2)(A)........................................................................................24

38 U.S.C. § 4323(h)(2) ...................................................................25, 26

39 U.S.C. § 4312(d)(2) .........................................................................20

USERRA § 4311 ...............................................................12, 13, 17, 20

USERRA § 4311(c) ...........................................................12, 13, 14, 18

USERRA § 4312 ...............................................................19, 20, 22

USERRA § 4312(a)(1)-(3) ................................................................21

USERRA § 4313 ...............................................................21, 22

USERRA § 4316 ...............................................................11, 12

USERRA § 4323(d)(1)(A) ...............................................................23, 25

USERRA § 4323(d)(1)(B) ...........................................................24, 25, 26

USERRA § 4323(d)(3) ...............................................................24, 25

**OTHER AUTHORITIES**

20 C.F.R. § 1002.5(i) ...............................................................22

20 C.F.R. § 1002.33 ...............................................................20

20 C.F.R. § 1002.37 ...............................................................10, 11

20 C.F.R. § 1002.85(c) ...............................................................16

20 C.F.R. § 1002.87 ...............................................................16

20 C.F.R. §§ 1002.191 & 1002.196(a)-(c) ...........................................22

20 C.F.R. § 1002.198(b) ...............................................................22, 23

20 C.F.R. § 1002.312(c) ...............................................................24

H.R. Rep. No. 103-65(I) reprinted in 1994 U.S.C.C.A.N. 2449 (1993) ...........22, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

Pursuant to Local Rule 16.1(f)(2), Plaintiff Vanessa Munoz, who brought this action under the Uniformed Services Employment and Reemployment Rights Act of 1995 ("USERRA"), 38 U.S.C. § 4301 *et seq.*, hereby submits the following Memorandum of Contentions of Fact and Law.

# I.   STATEMENT OF MATERIAL FACTS

## A.   Ms. Munoz's Joint Employment With Defendants

In June 2011, Ms. Munoz was hired by STG International, Inc. ("STGi") as a Certified Medical Assistant ("CMA") at the TRICARE Outpatient Clinic Claremont ("TOC") in San Diego under a contract between STGi and the U.S. Navy.  In that same month, InGenesis, Inc. ("InGenesis") and STGi entered into a formal agreement to form InGenesis STGi Partners, LLC ("the JV") and an operating agreement to jointly organize and operate the newly-formed company.  At the end of February 2013, the JV inherited STGi's contract with the Navy.  On March 1, 2013, Ms. Munoz became formally employed by the JV pursuant to the transferred contract ("the Navy Contract") and continued to work as a CMA at TOC as well as other patient facilities.  As a CMA, Ms. Munoz was rated as a "top performer" and an "outstanding employee" in all categories, including productivity, professionalism, and reliability.

STGi's role in managing the JV's employees continued after the contract transfer.  Defendants, not the Navy, performed functions related to human resources, job performance, and payroll for employees working pursuant to the Navy Contract.  Defendants also tracked leave time taken by employees on the JV's behalf.

## B.   Ms. Munoz's Military Leave

Ms. Munoz served as a hospital corpsman in the U.S. Navy starting in May 2007 until she was honorably discharged in April 2009.  After her discharge, she became a member of the U.S. Navy Reserve and served as a "flex reservist" with reserve obligations that required her to take military leave to attend regular trainings.

While employed by the JV, Ms. Munoz took military leave on the following occasions to serve in the Navy Reserve: (1) from April 15, 2013 to May 1, 2013; (2)

1

from May 6, 2013 to June 4, 2013; and (3) from September 23, 2013 to September 27, 2013.  Defendants employee handbooks promised that an employee returning from military service who satisfied certain conditions "ha]d] the right to be reemployed." Ms. Munoz met those conditions on each occasion of her military leave.  Nowhere in the handbooks (or any other written communication to employees) is the 40-hour limit on the use of Leave Without Pay ("LWOP") mentioned.

Not only did Ms. Munoz admittedly provide proper notice, but she provided Defendants with copies of her military orders.  While away for military service, Ms. Munoz did not have an obligation to complete timesheets.  Defendants approved and signed off on all of her timesheets and submitted her timesheets and her military orders to the Navy contractor.

## C. Defendants' Requirement of Exhausting Paid-Time Off Prior to Using Leave Without Pay

While Ms. Munoz was employed by the JV, Elham Ramirez, STGi's Account Manager, repeatedly instructed Ms. Munoz verbally that she must use her Paid Time Off ("PTO") before she could use her LWOP, even when the purpose of the leave was for fulfilling her military obligations.  In an e-mail chain dated May 8, 2013, in response to STGi's Human Relations Manager Maribel Contreras' suggestion while discussing Ms. Munoz's military leave that "we need to find a better way to communicate and track these leaves," Marne Valeros, STGi's Program Manager, who was responsible for managing the Navy Contract, stated:

> The contract allows for 15 days (120) hours per fiscal year.[1]  Once [an employee] reaches the max, she will then use any/all of her available BTO [aka PTO].  Once all of her BTO hours have been exhausted, she will then go into a LWOP status.

Ms. Valeros' statement was consistent with Defendants' interpretation of Section C.1.3.7 of the Navy Contract, which states that an HCP or healthcare worker such as

---

[1] Under the Navy Contract, consistent with federal law, employees are entitled to take 120 hours of paid military leave.

Ms. Munoz "shall enter a LWOP status upon exhaustion of any leave balance." In fact, Ms. Valeros testified at her deposition that "[t]here's a stipulation in the contract that state that's they must use all available BTO or PTO before they go into a leave without pay status." Defendants interpreted Section C.1.3.7 to require exhausting "all available BTO or PTO before they go into a leave without pay status." With respect to employees working pursuant to the Navy Contract, Section C.1.3.7 as understood by Defendants superseded any written policies stated in their employee handbooks.

Ms. Munoz's timesheets at the JV consistently show that any balance of her accrued PTO was exhausted before her LWOP was used. Edits to those timesheets reflect corrections made to comply with Ms. Ramirez's instructions. Ms. Munoz testified that she would have preferred not to use PTO to take military leave and would have preferred to use it for personal leave such as to care for her daughter. Her inability to do so resulted in her expending 50.75 PTO hours to perform military service. Had she not been forced to expend her PTO on military service, 100% of her LWOP hours would have been for <u>military service</u>.

**D.      Defendants' Termination of Ms. Munoz for "Exceeding the Leave Without Pay Policy" While Away for Military Service**

**1.      Defendants Knew That Ms. Munoz Had Taken Less Than 40 Hours of Non-Military LWOP**

On September 4, 2013, InGenesis's Operations Manager Cory Traywick received from Contracting Officer's Representative ("COR") Kristen Matella of the Navy a Contract Discrepancy Report ("CDR"), which stated that, as of July 13, 2013, Ms. Munoz had taken 170.5 hours of LWOP, and asked the JV to respond to the CDR. On September 5, 2013, Ms. Traywick forwarded the CDR to Ms. Valeros and requested STGi to prepare a response. That same day, after reviewing Ms. Munoz's timesheets, Ms. Ramirez informed Ms. Valeros that, of the leave time taken by Ms. Munoz, only 23.25 hours were LWOP taken for non-military-related purposes. On September 10, 2013, Ms. Valeros sent Ms. Traywick a proposed response to the CDR

3

stating that the military orders for Ms. Munoz's military leave from April 15 through May 1, 2013 and from May 6 through June 4, 2013 required her to take a total of 280 hours of paid or unpaid leave.

On September 11, 2013, Ms. Traywick, relying on calculations performed by STGi, provided Ms. Matella with the JV's formal, albeit tardy, response to the CDR. The response recognized that "the majority of the reported LWOP hours (170.5) appear to have been accumulated due to military" and that the military orders required her to take a total of 280 hours of leave between April and June 2013.  The response *expressly* recognized that terminating Ms. Munoz for taking leave to serve in the military "would violate federal law," specifically "USERRA."

On September 18, 2013, Ms. Munoz received additional military orders and informed Defendants that she would be taking additional military leave from September 23 through 27, 2013.  Prior to September 30, 2013, Defendants never told Ms. Munoz that she was not permitted to exceed 40 hours of LWOP or warned or advised her that there was any concern about her leave.

### 2.    The Navy Requested a Plan of Action, Not Termination

In response to the JV's response to the CDR, Ms. Matella explained that the CDR was issued because the JV "*failed to adequately communicate* Ms. Munoz's [LWOP] status in advance and thereby put the Department in a precarious position *without providing or offering a temporary replacement during her absence*."  As part of the CDR, Ms. Matella recommended to Ms. Draper that Ms. Munoz be removed from the Navy Contract.  Ms. Matella's recommendation to Ms. Draper was not adopted by Ms. Draper in the final determination; nor was it communicated to Defendants without Ms. Draper's September 26, 2013 final determination on the CDR.  Ms. Draper was the Contracting Officer ("KO") assigned to the Navy Contract.

Only Ms. Draper as the KO had the authority to render a final decision on the CDR; Ms. Matella did not.  Both of them consistently testified that they had no authority to recommend to or order a contractor to terminate an employee and

disputed that they did so.  Ms. Draper's final determination on the CDR merely requested from the JV a "plan of action" to "ensure that contracted services for this task order will not continue to be interrupted on an ongoing basis."  According to the Navy, Section C.1.3.7's requirement that "[t]he Contractor shall replace any HCW who has been on LWOP status for a total of 40 hours per task order" could be readily satisfied by a temporary replacement provided by the contractor during the employee's leave of absence.  Ms. Draper's final determination imposed no limitations on what the JV could propose in a plan of action.  Defendants did not consult with the Navy on the plan of action or how to meet the requirements of Section C.3.1.7.

After receiving Ms. Draper's final determination at 8:29 a.m. on Thursday, September 26, 2013, Ms. Traywick at 12:38 p.m. that day requested that Ms. Valeros prepare a plan of action.  Although Ms. Draper's final determination requested a plan of action, not Ms. Munoz's termination or removal, Ms. Traywick informed Ms. Valeros that "[t]hey are requesting, again, that she be removed from the contract."  Ms. Ramirez performed another detailed analysis of Ms. Munoz's LWOP hours and forwarded it to Ms. Valeros at 2:02 p.m. that same day.  The analysis *again* confirmed that no more than 23.25 hours of Ms. Munoz's LWOP were taken for non-military-related reasons.

However, that same day, at 4:38 p.m., Ms. Valeros wrote back to Ms. Traywick informing her that Ms. Munoz's employment would be terminated "this coming Monday" at 10 a.m.  At 6:08 p.m., Ms. Traywick responded to Ms. Valeros' e-mail sent at 4:38 p.m. directing Ms. Valeros to explain for the purpose of preparing the plan of action "how will you adjust how you monitor LWOP usage so you are alerted when any employee has over 20 hours of LWOP, so that they can notify the employee of the consequences if they exceed 40 hours."  Ms. Traywick's instruction to Ms. Valeros allowed for no exception for military leave.

That same day, at 5:10 p.m., Ms. Valeros forwarded to Ms. Contreras Ms.

5

Ramirez's analysis of Ms. Munoz's leave hours, which, at 5:11 p.m., Ms. Contreras in turn forwarded to Ms. Euwema.  Although Ms. Euwema had been informed of and discussed with Ms. Contreras the fact that Ms. Munoz had less than 40 hours of non-military LWOP, no one from Defendants informed the Navy of that fact.

On September 27, 2013, Ms. Traywick forwarded to Ms. Draper the Plan of Action.  As part of the Plan of Action, the JV advised the Navy that they had decided to terminate Ms. Munoz on September 30, 2013 and promised to monitor the "*use of military leave* and LWOP" as follows:

- The use of LWOP is highly discouraged and field employees may be removed from the contract if they exceed 40 hours of LWOP.

- Contractor will notify the government if any employee exceeds 40 hours LWOP and should be considered for removal.

- Extended periods of leave, including military leave, must be scheduled in advance and require approval from both the Contractor and government agencies.

- Employees are required to provide copies any supporting documentation, including military orders, in advance of such scheduled leave.

\* \* \*

- Additionally, Contractor is refining its monitoring of LWOP usage to more quickly identify individuals using excessive LWOP, and to ensure that any failure to adhere to these policies will be identified for *immediate disciplinary review*.

### 3.    Defendants Fired and Refused to Reemploy Ms. Munoz Upon Return From Military Leave

Ms. Munoz returned from military leave and returned to work at 7:40 a.m. (her usual start time) on September 30, 2013.  On that same day, without notice or warning of any kind, at 10 a.m. she was instructed to go into a conference room and was fired over the phone by Ms. Valeros and Ms. Contreras. Ms. Matella was at the facility but was not present for the call.  Ms. Valeros explained to Ms. Munoz that "there was an attendance issue and she had excessive absenteeism" and that she was "being removed from the contract per client request for exceeding the leave without pay policy."  Ms. Munoz responded that she "was a flex reservist, not a traditional drilling reservist so that my time had to be completed when I scheduled it and not one weekend a month

6

and the two weeks a year" and that she did not understand how she could have exceeded any LWOP policy "if the only time that I was on leave without pay or majority of it was while I was on military orders."

The "Termination Documentation Form" dated September 30, 2013 and prepared by Ms. Contreras states that "Employee stated that she is a flex reservist and has to meet specific 'Drill hours'. This has caused a conflict on meeting her obligations of the position." As to what she meant by that statement, Ms. Contreras testified at her deposition that "in [Ms. Munoz's] meeting also her drill hours, that conflicted with her meeting the hours on the contract. And that was my, I guess, statement, really." At the March 24, 2014 administrative hearing on Ms. Munoz's claim for unemployment insurance benefits, Ms. Contreras agreed with the statement that Ms. Munoz "was doing her Reserve duties with the Navy and thereby exceeded her allotted leave," and testified as follows:

> Judge Queenan: I don't want to put you on the spot, but if you are in the Reserves, they do, reservists – my understanding is reservists do have to spend a certain amount of time each year in the military, you know, serving.
>
> Ms. Contreras: And that may be correct. And her obligations, then, she needs to accrue the appropriate personal time off, PTO [*i.e.*, Paid-Time Off], which they accrue on the contract eight hours for 80 hours worked in order to take time off. So she did not – she exceeded all of those in the six-month period.

Ms. Contreras further testified that Ms. Munoz was terminated for "exceeding the leave without pay policy per the contract requirements" and that "it was the exceeding the allotted leave hours that resulted in the termination."

Prior to terminating Ms. Munoz's employment, Defendants knew (1) that Ms. Munoz had taken the majority of her LWOP to fulfill her military obligations; (2) that Ms. Munoz had taken no more than 23.25 hours of non-military LWOP; (3) that terminating Ms. Munoz for taking leave in excess of 40 LWOP hours raised USERRA concerns; and (4) that the Navy's final determination on the CDR did not recommend or request removal of Ms. Munoz.

Ms. Euwema testified that in September 2013, the decision to terminate Ms.

7

Munoz "caused me concerns" from "an employment law standpoint" and specifically pursuant to rights protected by USERRA "for employees who take time off due to the military leave" and that the decision to terminate Ms. Munoz was unfair. STGi raised these USERRA concerns to Ms. Traywick (who was also familiar with USERRA from prior work). Ms. Valeros testified that she was concerned as to the legality of firing Ms. Munoz due to her military status, and that Ms. Munoz's rights were protected because of her military status. In fact, Ms. Valeros separately told Ms. Contreras and Mr. Carpenter, the two people at STGi to whom she reported in 2013, that firing Ms. Munoz was "'unacceptable' …[b]ecause she was on military leave."

At her deposition, Ms. Traywick agreed that, in Ms. Draper's final determination, "there's no suggestion or recommendation that Ms. Munoz be removed or that she be terminated." Ms. Euwema testified at her own deposition that Defendants "had a choice" as to whether to fire Ms. Munoz.

### 4.   Defendants Failed to Consider Other Options

Prior to terminating Ms. Munoz, Defendants did not consider any options other than terminating her. Section C.3.2.1 of the Navy Contract required the JV to "have sufficient qualified reserve personnel so that all services are provided in the event a HCW scheduled to work . . . is otherwise unavailable to work." In 2013, the JV could have provided a "backfill" temporary replacement during Ms. Munoz's military leaves of absence. In fact, Ms. Valeros sought a backfill for Ms. Munoz when she was on medical leave between June 15, 2012 and July 9, 2012 while employed at STGi on virtually the same contract. STGi employed backup personnel in 2013. Although Ms. Valeros testified that Defendants "could have provided a replacement" in 2013, there is no evidence that Defendants made any effort to provide one during Ms. Munoz's military leave.

Furthermore, prior to terminating Ms. Munoz, no one from Defendants considered transferring Ms. Munoz to a different patient facility where the JV provided staffing services. From March 2013 until at least February 2014, the Navy

1  Contract included multiple task orders specific to different locations in San Diego.
2  Merely exceeding the 40-hour limit on LWOP per task order or on one task order
3  specific to a facility location would not have prevented Ms. Munoz from working on a
4  different task order specific to another location.

5  No person replaced Ms. Munoz in her position as a CMA for the JV for the 90
6  days following her termination on September 30, 2013.  Not until January 21, 2014
7  did Defendants fill the position at TOC (task order no. 6) and then only with William
8  Hissom – an employee whom Defendants transferred from the Naval Air Station
9  North Island location (task order no. 5) in San Diego on the same contract.  Further,
10  another employee of the JV, Susan Etheridge, had exceeded 40 hours of LWOP for
11  non-military-related reasons and was not terminated, despite her "excessive LWOP"
12  and Defendants' express concerns over "inconsistency with our decision made with
13  removing Vanessa Munoz" whose "reason for LWOP was for completing reserved
14  duty hours."

15  There is no evidence provided that, prior to terminating Ms. Munoz, Defendants
16  made any efforts to qualify Ms. Munoz for any other position.  In addition to the JV-
17  Navy Contract (and JV contract with the Army), STGi manages contracts of its own,
18  which offer healthcare services and provide fitness specialists and health promotion
19  coordinators.  STGi and the JV typically have about ten open and unfilled healthcare
20  worker positions, which include medical assistant positions and for which they have
21  contracts.  Between mid-2012 and February 2014, InGenesis managed at least three
22  non-JV contracts with the federal government for supplying healthcare professionals.

23  Prior to terminating Ms. Munoz, Defendants did not follow the discipline
24  procedures set forth in their own handbook – a "progressive discipline process"
25  consisting of "steps" such as verbal warning, written warning and suspension before
26  termination.  Prior to terminating Ms. Munoz, despite their employees' expressed
27  concerns about USERRA, no one from Defendants sought legal consultation with any
28  attorney in connection with terminating Ms. Munoz's employment.

9

## II.  STATEMENT OF POINTS OF LAW

### A.    Defendants' Liability as Joint Employers

USERRA defines the term "employer" to include not only "any person, institution, organization, or other entity that pays salary or wages for work performed," but also those that "ha[ve] control over employment opportunities" or "to whom the employer has delegated the performance of employment-related responsibilities."  38 U.S.C. § 4303(4)(A).  For purposes of USERRA, an employee can be employed in one job by more than one employer, and each employer has its own responsibilities to comply with USERRA.  20 C.F.R. § 1002.37 ("In such an instance, both employers share responsibility for compliance with USERRA."); *United States v. Nevada*, 817 F. Supp. 2d 1230, 1237 (D. Nev. 2011) (finding that both the Controller and the State qualified as employer under USERRA); *Deets v. Massman Const. Co*., No. 15-1411, 2016 WL 403442, at *5 (7th Cir. Feb. 3, 2016) (concluding formation of joint venture did not shield its partner-company from liability).

Here, Defendants do not dispute that Ms. Munoz was employed by the JV between March 1, 2013 and September 30, 2013.  The evidence demonstrates that STGi and InGenesis were joint employers of Ms. Munoz during that period.  Pursuant to the JV operating agreement, both STGi and InGenesis were responsible for managing the JV.  Through their respective employees – *i.e*., Ms. Contreras, Ms. Euwema, Ms. Ramirez, and Ms. Valeros in the case of STGi and Ms. Traywick in the case of InGenesis – STGi and InGenesis each played a part in employing and terminating Ms. Munoz.  Specifically, through Ms. Traywick, InGenesis was actively involved in responding to the CDR by, for example, directing STGi to provide responses to the original CDR as well as the Navy's request for a plan of action and InGenesis was ultimately responsible for responding to the CDR and developing the Plan of Action.  STGi's employee Elham Ramirez reviewed and signed off on all of Ms. Munoz's timesheets.  STGi's employees, including Ms. Ramirez, analyzed Ms.

10

Munoz's leave hours and determined that she had taken no more than 23.25 hours of non-military LWOP.  Finally, two STGi's employees – Ms. Valeros and Ms. Contreras – fired Ms. Munoz by telephone on September 30, 2013.

For purposes of USERRA, by co-employing Ms. Munoz, Defendants each had obligations not to discriminate against her or participate in the other's discrimination and to promptly and properly reemploy Ms. Munoz upon her September 30, 2013 return from military service, and each of them owed Ms. Munoz that obligation, regardless of the Navy's alleged desires.  *See* 20 C.F.R. § 1002.37.

**B.    Evidence That Defendants Required Munoz to Use PTO to Take Military Leave Remains Relevant Despite Dismissal of Count I**

Although the Court held that Plaintiff lacked standing to pursue her USERRA § 4316(d) claim,[2] ECF No. 196 ("April 22, 2016 Order") at 8, Plaintiff's unrebutted testimony and other evidence showing that Defendants verbally instructed and required Plaintiff to apply PTO to her military leave remains relevant to her discrimination claim under USERRA § 4311. Specifically, as a result of Defendants' practice, Ms. Munoz could not have reserved her PTO for personal leave only.  As a single mother, Ms. Munoz testified that she would have preferred to reserve her leave to spend time with or care for her daughter and that she did not and would not have chosen to use PTO for military leave.  Nor was there any economic motivation for her doing so as her pay during the reserves was at least the same as her pay at the JV.  In calculating the leave hours taken by Ms. Munoz, Defendants determined that all but 23.25 hours of LWOP had been used to serve in the military.   Yet, of her PTO hours, over 50 had been used to take her military leave.  Thus, had she not been forced to expend her PTO on military service, she would have had *no* hours of non-military

---

[2] USERRA § 4316(d) provides that "[n]o employer may require" an employee "to use vacation, annual, or similar leave during [a] period of [military] service." 38 U.S.C. § 4316(d); *Conners v. Billerica Police Dept.,* 679 F. Supp. 2d 218, 224-225 (D. Mass. 2010) ("USERRA . . . sets limits on how an employer may record an employee's time while he or she is on duty in a uniformed service") (quoting 38 U.S.C. § 4316(d)).

1  LWOP, and all of her LWOP hours would have been categorized as military LWOP.

2  **C.     Plaintiff's Discrimination Claim Under USERRA § 4311**

3      Count II alleges that Defendants' termination of Ms. Munoz's employment

4  and/or refusal to reemploy her violated USERRA § 4311, which "prohibit[s]

5  discrimination against persons because of their service in the uniformed services."

6  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  Specifically,

7  USERRA § 4311(a) provides that a member of a uniformed service "shall not be

8  denied . . . reemployment, retention in employment . . . or any benefit of employment

9  by an employer on the basis of that membership, application for membership,

10 performance of service, application for service, or obligation."  38 U.S.C. § 4311(a).

11 Under the burden-of-proof scheme set forth in USERRA § 4311(c)(1), "the employee

12 first has the burden of showing, by a preponderance of the evidence, that his or her

13 protected status was 'a substantial or motivating factor in the adverse [employment]

14 action.'"  *Leisek*, 278 F.3d at 899.  After the employee carries her burden, the burden

15 of proof shifts to the employer who "may then avoid liability only by showing, as an

16 affirmative defense, that the employer would have taken the same action without

17 regard to the employee's protected status."  *Id.*

18      **1.     Plaintiff's Burden of Proof**

19      In order to carry her burden of proof for a discrimination claim under

20 USERRA, the employee must establish the following: (a) that the employee was

21 protected under § 4311(a) by virtue of her military status or activity; (b) that the

22 employer took an adverse employment action against the employee; and (c) that the

23 employee's protected status or activity was "a motivating factor" – not the sole factor

24 – in the employer's adverse action.  38 U.S.C. § 4311(c)(1); *Leisek*, 278 F.3d at 898.

25      **a.     Ms. Munoz's Protected Military Status and Activity**

26      The evidence demonstrates that Ms. Munoz was protected under USERRA

27 § 4311(a) by virtue of her military status and activity.

28

### b.      Defendants' Adverse Employment Action

The evidence demonstrates that, on September 30, 2013, Defendants, through STGi's employees (*i.e.*, Ms. Contreras and Ms. Valeros), terminated Ms. Munoz's employment and denied her reemployment in her CMA position or any other position.

### c.      Ms. Munoz's Protected Status or Activity as a Motivating Factor

USERRA § 4311(c) requires that an employee's protected status or activity be "*a*" motivating factor in the employer's adverse employment action.  38 U.S.C. § 4311(c)(1).  The statute does not impose the requirement that, for an adverse action taken against an employee to be unlawful under Section 4311, the discriminatory reason be the exclusive reason for the adverse action.  *Leisek*, 278 F.3d at 898 ("USERRA replaced the 'sole motivation' test [which the Supreme Court in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559 (1981) interpreted USERRA's predecessor to require] with a more lenient standard").  The term "motivating factor" in USERRA § 4311(c) means that "if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations." *Robinson v. Morris Moore Chevrolet-Buick, Inc.,* 974 F. Supp. 571, 576 (E.D. Tex. 1997) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250 (1989)).  "[M]ilitary service is a motivating factor for an adverse employment action if the employer 'relied on, took into account, considered, or conditioned its decision' on the employee's military-related absence or obligation." *McMillan v. Dep't of Justice*, 812 F.3d 1364, 1372 (Fed. Cir. 2016).   A plaintiff can establish the "motivating factor" element of a USERRA discrimination claim "by either direct or circumstantial evidence." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).  In this case, there is both.  April 22, 2016 Order at 14 (finding that "because there is significant evidence showing that Defendants were aware that Plaintiff's purportedly excessive LWOP was related to her military service, a jury could determine Plaintiff's military service was a

13

motivating factor in her termination, regardless of the Navy's determination).

### Direct Evidence

"Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Deets*, 2016 WL 403442, at *4 (reversing district court and concluding statement made about reasons for plaintiff's termination was direct evidence of discrimination); *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1221 (9th Cir. 1998) ("Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.")  Adverse action against an employee based on absence for military service is discrimination under USERRA.  *McMillan,* 812 F.3d at 1380; *Erickson v. U.S. Postal Serv.*, 571 F3d 1364, 1368-69 (Fed. Cir. 2009).

Here, Defendants' expressed reasons for Ms. Munoz's termination constitute direct evidence: (1) Ms. Valeros' testimony that Ms. Munoz was fired due to "excessive absenteeism" despite conceding that Ms. Munoz took most of her leave to fulfill her military obligations; (2) the Termination Documentation Form prepared by Ms. Contreras stating that Ms. Munoz's being a flex reservist with "specific drill hours" "has caused a conflict on meeting her obligations of the position"; (3) Ms. Contreras' explanation of that statement at her deposition, and (5) Ms. Contreras' testimony at the unemployment hearing that Ms. Munoz "was doing her Reserve duties with the Navy and thereby exceeded her allotted leave."  In short, Ms. Munoz was terminated for exceeding 40 hours LWOP – nearly all of which was taken to fulfill her military duties.  Excluding her military leave (without even adjusting for the PTO hours) by Defendants' own admission leaves only 23.25 hours.  In other words, if her military leave is excluded (as it should have been), the expressed reasons do not provide a basis for her termination.  Thus, her military leave was a motivating factor.

### Circumstantial Evidence

"Because employers rarely concede an improper motivation for their

14

employment actions," courts have held that employees can establish the "motivating factor" element "by submitting evidence from which such a motive may be fairly inferred." *McMillan*, 812 F.3d at 1372; *Leisek*, 278 F.3d at 900 (discriminatory motivation "may be reasonably inferred from a variety of factors"). Circumstantial evidence includes (a) "proximity in time between the employee's military activity and the adverse employment action"; (b) "inconsistencies between proffered reason and other actions of the employer"; (c) "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity"; and (d) "disparate treatment of certain employees compared to other employees with similar work records or offenses." *Sheehan*, 240 F.3d at 1014; *McMillan*, 812 F.3d at 1372 (quoting *Sheehan*); *Leisek*, 278 F.3d at 900 (quoting *Sheehan*). Circumstantial evidence also establishes the "motivating factor" element:

**Proximity in Time**. On September 30, 2013, Defendants terminated Ms. Munoz within hours of her return from military leave. *See McMillan*, 812 F.3d at 1373 (finding timing of adverse action favored employee's claim where adverse action took place less than two months after employee's military service); *Patton v. Target Corp.*, No. 03-CV-1722-BR, 2007 WL 894560, at *7 (D. Or. Mar. 21, 2007) (plaintiff met his initial burden under *Leisek* where he "learned about his demotion on the morning of his return from military leave" and record failed to establish employer's decision "was made before Plaintiff went on leave").

**Inconsistencies Between the Employer's Reasons and Actions**. Defendants have argued that the reason for their adverse action was the Navy's alleged request for Ms. Munoz's removal or termination. But their evidence suffers several inconsistencies. First, the Navy denies that it requested Ms. Munoz's removal or termination. Second, Ms. Euwema testified that the Navy did not have the authority to terminate Ms. Munoz and that the JV chose to terminate her. Third, Section C.3.1.2 of the Navy Contract required the JV to maintain a standby workforce to fill in for employees on leave. The JV could have satisfied the requirements of Section C.3.1.7

15

by providing a "backfill" replacement during Ms. Munoz's leave of absence.  The JV also did not fill her position for the 90 days following her termination.  Finally, the JV did not follow at its own written policies in terminating Ms. Munoz.  Its policies not only professed that returning servicemembers satisfying certain conditions, which Ms. Munoz did, were guaranteed reemployment, but set forth a "progressive discipline process."  Prior to September 30, 2013, Ms. Munoz was given no warnings regarding her use of LWOP and none was documented in her employment file.  *Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*, 680 F. Supp. 2d 317, 327 (D. Mass. 2010) (defendant's failure to adhere to progressive discipline policy supported inference of discriminatory purpose and jury's USERRA verdict).

**Expressed Hostility.**  Defendants' expressed hostility to military personnel is evidenced by their plan of action, which promised to subject servicemembers to discipline for exceeding 40 hours of LWOP.  The plan of action also promised to impose restrictions that would violate DOL regulations.  *E.g.,* 20 C.F.R. § 1002.87 (providing employee does not need employer permission to take military leave); 20 C.F.R. § 1002.85(c) (providing employees need not provide employers military orders in advance of leave); *see Leisek*, 278 F.3d at 900 (employer's proposed plan to limit employee's future military service-related absences supported inference of discriminatory purpose); *Arroyo v. Volvo Grp. N.  Am., LLC*, 805 F.3d 278, 285 (7th Cir. 2015) ("a jury could understandably detect" animus in supervisors' discussions regarding "the burden [the employee's] frequent military leave placed on the company" and e-mails discussing "'dilemma' of 'disciplin[ing] a person for taking too much time off for military reserve duty").

**Disparate Treatment of Other Employees.**  Defendants' disparate treatment of non-military individuals is evidenced by the termination of Ms. Munoz, whereas Defendants allowed Ms. Etheridge to remain employed when she had exceeded 40 hours LWOP for non-military-related purposes.  *See Campbell v. Catholic Cmty. Servs. of W. Wash.*, No. C10-1579RSL, 2012 WL 600696, at *4 (W.D. Wash. Feb. 22,

2012) (employer's failure to "discipline other employees who violated the same list policy it purportedly relied upon to fire Plaintiff" could factor into jury's determination as to whether employer's proffered reason was merely pretextual).

Defendants' argument that the JV did not believe at the time of Ms. Munoz's termination that the Navy's calculations are incorrect not only is contradicted by the evidence but also misunderstands the applicable law governing the plaintiff's burden of proof for a USERRA § 4311 claim.  April 22, 2016 Order at 13 (finding that "there is sufficient evidence from which a jury could determine that Defendants did not actually believe the Navy's leave determination was accurate at the time it was made").  Even if the jury were to determine that the JV did not believe that the Navy's calculations were incorrect, the evidence shows that STGi was not similarly ignorant and is independently liable for its own violation of § 4311.

### 2.    Defendants' Burden of Proof

The allocation of the burdens of proof in a USERRA discrimination case differs from the *McDonnell Douglas* framework in a Title VII case in which the employee carries the burden of persuasion at all times and the employer only bears the burden to articulate a legitimate, non-discriminatory reason.  *Sheehan*, 240 F.3d at 1014 (*McDonnell Douglas* model, as opposed to USERRA's burden-shifting framework, "shifts the burden of production but not the risk of nonpersuasion" to the employer); *Velazquez-Garcia v. Horizon Lines Of Puerto Rico, Inc.*, 473 F.3d 11, 17 (1st Cir. 2007) (USERRA's "two-pronged burden-shifting analysis is markedly different from the three-pronged burden-shifting analysis in Title VII actions"); *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 511 (8th Cir. 2005) (USERRA's framework "shift[s] the burden of persuasion, as well as production, to the employer").  "[U]nder USERRA, the employee does not have the burden of demonstrating that the employer's stated reason is a pretext." *Velazquez-Garcia,* 473 F.3d at 17.  Instead, the employer bears the ultimate burden of "show[ing], by a preponderance of the evidence, that the stated reason was *not* a pretext; that is, that 'the action *would* have been taken in the absence

17

of [the employee's military] service.'" *Id.* (quoting 38 U.S.C. § 4311(c)); *Reed v. Honeywell Int'l, Inc*., No. CV07-0396-PHX-MHM, 2009 WL 886844, at *6 (D. Ariz. Mar. 31, 2009), *as amended* (Apr. 27, 2009) (same).

"An employer cannot escape liability under USERRA by claiming that it was merely discriminating against an employee on the basis of his absence when that absence was for military service." *Erickson,* 571 F.3d at 1368 ; *see Vega-Colon v. Wyeth Pharm*., 625 F.3d 22, 30 (1st Cir. 2010) ("The fact that [an employer] may have treated other absences similarly does not overcome the fact that it may have based its treatment of [plaintiff], at least in part, on his military absences."); *Williams v. Sysco San Francisco, Inc.,* No. C 10-03760 MEJ, 2011 WL 6140970, at *4 (N.D. Cal. Dec. 8, 2011) (quoting *Erickson*).  In *Erickson,* the Postal Service removed plaintiff from his position, noting as its reason "his excessive use of military leave."  571 F.3d at 1368.  The Federal Circuit concluded that "an employer can not treat employees on military duty like those on nonmilitary leave of absence." *Id.* at 1369; *McMillan*, 812 F.3d at 1372 (quoting *Erickson*).  The *McMillan* court explained that "[e]ven when an employee's acts – in that case prolonged absence – would justify the [employer's] adverse employment action if not related to his military service, USERRA is violated if th[ose] acts of the employee are required by the military service." *Id*. at 1380.  As another court in this Circuit explained, when "Plaintiff's military absences caused him to be in violation of Defendant's attendance policy and directly resulted in his termination, Defendant cannot shift the blame for Plaintiff's termination to only the attendance policy" purportedly because "this [*i.e.*, accumulating ten points under the policy, which led to Plaintiff's termination] has no relation to Plaintiff's military status." *Williams,* 2011 WL 6140970, at *4.

Defendants' argument that their burden of proof is met because the Navy requested Ms. Munoz's removal is legally and factually insufficient.  The final determination in the CDR merely requested a plan of action, not Ms. Munoz's removal.  April 22, 2016 Order at 14 (noting that "KO Judy Draper only requested

18

that Defendants 'provide a detailed plan of action . . .'").  Even if the Navy had requested Defendants to remove Ms. Munoz because she took too much leave to fulfill her military duties, it is not a legitimate basis to terminate an employee because of a customer's discriminatory preference.  *Tamosaitis v. URS Inc.*, 781 F.3d 468, 482 (9th Cir. 2014) ("It would be totally anomalous if we were to allow the preferences . . . of [a] customer[] to determine whether the . . . discrimination was valid.").  Finally, had Defendants not required Ms. Munoz to use her PTO for her military leave, her non-military LWOP hours would have been zero, because her military leave PTO exceeded 50 hours while her non-military LWOP was only 23.25 hours.  Thus, she would have been able to use her PTO for personal leave.

## D.  Plaintiff's Claim Under USERRA § 4312 for Denial of Her Rights to Reemployment

Count III alleges that, by terminating her, Defendants violated Ms. Munoz's rights to reemployment under USERRA § 4312, which provides that a returning servicemember is "entitled to the reemployment rights and benefits and other employment benefits" so long as (a) she has provided notice; (b) the cumulative length of her military leave does not exceed five years; and (c) she promptly reports to work.  38 U.S.C. § 4312(a); *Jordan v. Air Products & Chemicals, Inc.*, 225 F. Supp. 2d 1206, 1207 (C.D. Cal. 2002) (stating same eligibility criteria for reemployment under § 4312).  USERRA "§ 4312 creates an unqualified right to reemployment to those who satisfy the service duration and notice requirements." *Id.* at 1208.  The right to reemployment under § 4312 does not require proof of discrimination under § 4311.  20 C.F.R. § 1002.33.  A servicemember's basic entitlement to his or her reemployment rights under USERRA § 4312 "do[es] not turn on qualifications." *United States v. Nevada*, No. 3:09–CV–00314–LRH–WGC, 2012 WL 1517296, at *2 (D. Nev. Apr. 30, 2012).  Termination effective immediately upon a servicemember's return to work constitutes denial of reemployment. *Jordan*, 225 F. Supp. 2d at 1209 (employer failed to reemploy employee who was fired immediately upon return from

1  military service).

2      The JV and InGenesis' Amended Answer asserts a "changed-circumstances"

3  affirmative defense, one of the three affirmative defenses allowed by USERRA to the

4  reemployment requirement under § 4312; STGi's Amended Answer does not assert

5  any of those defenses.  ECF No. 23 at 18; ECF No. 22 at 17-19.  Under the "changed-

6  circumstances" affirmative defense, "[a]n employer is not required to reemploy a

7  person under this chapter if . . . the employer's circumstances have so changed as to

8  make such reemployment [of the returning servicemember] impossible or

9  unreasonable."  38 U.S.C. § 4312(d)(1)(A).  The employer bears the burden of

10  proving by a preponderance of evidence that the changed-circumstances defense

11  applies.  39 U.S.C. § 4312(d)(2); C.F.R. § 1002.139(a).  Because USERRA is to be

12  construed broadly in favor of a returning servicemember, the changed-circumstances

13  defense is construed narrowly against the employer.  *Nevada*, 2012 WL 1517296, at

14  *4 ("As the very purpose of USERRA is to ensure reemployment to our military men

15  and women returning from military service except in the most exceptional

16  circumstances, the statute understandably makes the employer's desires irrelevant.");

17  *Brown v. Prairie Farms Dairy, Inc*., 872 F. Supp. 2d 637, 647 (M.D. Tenn. 2012)

18  (changed-circumstances defense "must be construed narrowly against an employer

19  seeking to avoid USERRA liability").  "Courts generally require that an employer

20  show that reinstatement of the employee to his former position would be unreasonable

21  or would result in hiring the employee to a position that no longer exists."  *Davis v.*

22  *Crothall Servs. Grp., Inc*., 961 F. Supp. 2d 716, 728 (W.D. Pa. 2013).  An employer's

23  belief that reemployment would be undesirable would not constitute a basis for the

24  changed-circumstances defense.  *Nevada*, 2012 WL 1517296, at *4.  A mere decline

25  in business is not enough to qualify for this defense.  *Cooper v. Hungry Buzzard*

26  *Recovery, LLC*, No. C11-0280-JCC, 2011 WL 5299422, at *3 (W.D. Wash. Nov. 4,

27  2011).  "Absent evidence showing that [plaintiff] was unqualified and could not

28  become qualified for *any and every* position within the § 4313 order of priority,

20

1  establishing the changed circumstances affirmative defense on the basis of [plaintiff's]

2  lack of qualifications is an impossibility." *Nevada*, 2012 WL 1517296, at *4.

3        The evidence in this case demonstrates (which Defendants did not dispute on

4  summary judgment), that Ms. Munoz satisfied the three eligibility requirements set

5  forth in USERRA § 4312(a)(1)-(3) and was eligible for reemployment.  The basis of

6  Defendants' changed-circumstances affirmative defense is their claim that the Navy

7  requested Ms. Munoz's removal.  This defense should not apply.  First, the Navy's

8  final determination on the CDR did not request Ms. Munoz's removal.  April 22, 2016

9  Order at 19 (noting that the Navy's alleged request for Ms. Munoz's removal "does

10  not appear to be the type of 'changed circumstance' on behalf of a defendant that is

11  usually contemplated under [the changed-circumstances] defense").  Second,

12  Defendants could have remedied the issues in the CDR by providing a temporary

13  replacement, but have offered no evidence explaining why they did not provide such a

14  replacement during her leave of absence.  Third, while the Navy's actual request was

15  for contract performance and continuity of services, Defendants failed to promptly fill

16  Ms. Munoz's position.  When the JV finally replaced Ms. Munoz, it was with an

17  employee who transferred from another Navy site under the *same contract* (although a

18  different task order).  Defendants have offered no evidence explaining why they could

19  not have accomplished the transfer in October 2013 and offered Ms. Munoz the open

20  position at the other location or why there was some urgency to terminate Ms. Munoz.

21  Finally, as explained below, there is no evidence showing that Ms. Munoz was

22  "unqualified" for her CMA position or "could not become qualified for *any and every*

23  position within the § 4313 order of priority."  *Infra* II.E.

**E.   Plaintiff's Claim Under USERRA § 4313 for Denial of an Appropriate Reemployment Position**

24  

25        Count IV alleges that Defendants failed to promptly reemploy Ms. Munoz in an

26  appropriate position within the "order of priority" set forth in USERRA § 4313.

27  Eligibility for reemployment under USERRA § 4312 triggers § 4313's guarantee of an

28  

21

appropriate position.  38 U.S.C. § 4313.  For a period of military service of less than 91 days, the employee must be "promptly reemployed" in the following "order of priority": (1) the position that the employee would have attained with reasonable certainty if not for the employee's absence due to military service ("the escalator position"); (2) the position that the employee was employed on the date that the period of service began ("the pre-service position"); or (3) if the employee is not qualified for (1) or (2) above, any other position that is the nearest approximation first to (1) and then to (2) ("the nearest-approximation position").  *Id*. § 4313(a)(1)(A)-(B) & (a)(4); 20 C.F.R. §§ 1002.191 & 1002.196(a)-(c).  The term "qualified" means "having the ability to perform the essential tasks of the position."  38 U.S.C. § 4303(9).

Determination of lack of qualifications can be made "[o]nly after the employer makes reasonable efforts" at reemployment.  20 C.F.R. § 1002.198(b); H.R. Rep. No. 103-65(I), at 31, as reprinted in 1994 U.S.C.C.A.N. 2449, 2464 (1993) ("The claim that a returning serviceperson is not qualified for the 'escalator' position must be proven by the employer and only after reasonable efforts by the employer to enable the serviceperson to become qualified have been undertaken and exhausted.").  The term "reasonable efforts" means "actions, including training provided by an employer, that do not place an undue hardship on the employer."  20 C.F.R. § 1002.5(i).  Even if a "person 'is not qualified to be employed'" in "the primary reemployment positions" and "cannot become qualified with reasonable efforts by the employer," the person still has the right to be reemployed in an alternative position, *i.e.*, so long as such alternative positions exist.  *Nevada*, 2012 WL 1517296, at *2-3 (finding plaintiff's purported lack of qualifications did not negate right to reemployment generally).  The burden of proving an employee's lack of qualifications for a position falls on the employer.  *Petty v. Metro. Gov't of Nashville-Davidson Cnty*., 538 F.3d 431, 444 (6th Cir. 2008).  Meeting that burden includes proof by the employer that it has made reasonable efforts to help the employee become qualified.  H.R. Rep. No. 103-65(I), at 22, as reprinted in 1994 U.S.C.C.A.N. 2449, 2455 (1993) (the term "qualified" "is

1  intended to ensure that, before a returning serviceperson can be found not to be

2  qualified for a particular position, the employer must prove that, after reasonable

3  efforts have been undertaken to help the person become qualified, he or she cannot

4  perform the essential tasks of the position, not necessarily all of the tasks").

5          There is no evidence that Ms. Munoz was not qualified for the CMA position or

6  that Defendants made any reasonable efforts to qualify Ms. Munoz for her pre-service

7  position as a CMA or any other position.  April 22, 2016 Order at 22 n. 11 ("The

8  record does not reflect that Defendants made any efforts to make Plaintiff qualified for

9  the [CMA] position, such as additional training regarding the proper way to track and

10  communicate Plaintiff's military leave.") (citing 20 C.F.R. § 1002.5).  Defendants

11  attempt to rely on Ms. Matella's comment in the CDR that Ms. Munoz's leave "ha[d]

12  made her an unreliable member of a clinic team" to argue that Ms. Munoz was

13  "unqualified" for the CMA position or was not in "good standing" misconstrues the

14  meaning of "qualified" under the law.  In addition, Ms. Matella testified that Ms.

15  Munoz *would have been qualified to work on another task order under the same*

16  *contract*.  Furthermore, Defendants' request in the JV's response to the CDR for a

17  temporary waiver of the requirement of Section C.1.3.7 of the Navy Contract hardly

18  constitutes evidence of reasonable efforts to qualify Ms. Munoz under 20 C.F.R. §

19  1002.198(b) when providing a temporary replacement during Ms. Munoz's absence

20  would have addressed the Navy's concerns.  The evidence instead shows a lack of

21  reasonable efforts made by Defendants.

22  ## III.  RELIEF SOUGHT

23          USERRA § 4323(d)(1)(A) authorizes a court to "require the employer to

24  comply with the provisions of [USERRA]."  38 U.S.C. § 4323(d)(1)(A).  USERRA

25  § 4323(e) provides that "[t]he court shall use, in any case in which the court

26  determines it is appropriate, its full equity powers . . . to vindicate fully the rights or

27  benefits of persons under [USERRA]."  *Id*. § 4323(e).  Reinstatement is an appropriate

28  equitable remedy under USERRA.  *Serricchio v. Wachovia Secs. LLC*, 658 F.3d 169,

23

193 (2d Cir. 2011) (USERRA provides for remedy of reinstatement by permitting courts to "require the employer to comply with the provisions of [USERRA]").

USERRA § 4323(d)(1)(B) authorizes a court to "require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of [USERRA]." 38 U.S.C. § 4323(d)(1)(B). USERRA § 4323(d)(1)(C) authorizes a court to "require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) [*i.e.*, § 4323(d)(1)(B)] as liquidated damages, if the court determines that the employer's failure to comply with the provisions of [USERRA] was willful." 38 U.S.C. § 4323(d)(1)(C). "A violation shall be considered to be willful if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the Act." 20 C.F.R. § 1002.312(c); *Fryer v. A.S.A.P. Fire & Safety Corp., Inc*., 658 F.3d 85, 91 (1st Cir. 2011) ("[T]he term 'willful' as used in § 4323(d)(1)(C) of USERRA refers to a knowing violation or action taken in reckless disregard of the obligations imposed by USERRA"). "An intent to violate the statute is not necessary." *Nevada*, 817 F. Supp. 2d at 1251. (citing *Trans. World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 & n. 19 (1985)). An employer's knowledge of its obligations to reemploy the employee, coupled with testimony regarding the employer's indifference to its obligations, constitutes sufficient evidence for a reasonable jury to conclude that the employer acted with reckless disregard of its USERRA obligations. *Fryer*, 658 F.3d at 92 (affirming jury verdict that employer acted with willfulness in terminating employee where "there was ample evidence that [the employer's] claim of excessive absenteeism was merely pretextual.") An award of lost wages or benefits or of liquidated damages "shall be in addition to, and shall not diminish, any of the other rights and benefits provided for under [USERRA]." 38 U.S.C. § 4323(d)(2)(A).

USERRA § 4323(d)(3) authorizes a court to award "prejudgment interest." 38 U.S.C. § 4323(d)(3). USERRA § 4323(h)(2) authorizes a court to award "reasonable

24

1  attorney fees, expert witness fees, and other litigation expenses" to a prevailing

2  plaintiff "who obtained private counsel." 38 U.S.C. § 4323(h)(2).  A prevailing

3  defendant is not entitled to an award of fees under USERRA.  *Id*. § 4323(h)(1) & (2).

4      Here, Ms. Munoz seeks pursuant to USERRA §§ 4323(d)(1)(A) and 4323(e)

5  reinstatement or reemployment in a position in the order of priority under USERRA.

6      Ms. Munoz also seeks back pay for lost wages and benefits pursuant to

7  USERRA § 4323(d)(1)(B).  Until her employment at Borrego Community Health

8  Foundation ("Borrego Health") as a Patient Access Trainer began effective December

9  16, 2013, Ms. Munoz had been unemployed from October 1, 2013 through December

10  15, 2013.  Her lost wages during that period amounted to approximately $7,901.  As a

11  result of her lower pay rate at Borrego Health between December 16, 2013 and May

12  31, 2014, she suffered an additional wage loss of approximately $1,839 before she

13  received a wage increase effective June 1, 2014.

14      Between September 30, 2013 and January 3, 2014, the date on which she

15  received her first paycheck from Borrego Health, Ms. Munoz made a pre-age 59.5

16  early withdrawal from her STG International, Inc. 401(k) Retirement Savings Plan

17  account to cover her living expenses as a result of her sudden and unexpected

18  termination .  As a result, she incurred a 10% IRS early withdrawal penalty in the

19  amount of approximately $916, and a loss in the growth of her 401(k) balance in the

20  amount of approximately $9,942.  Ms. Munoz also seeks to recover these amounts.

21      Using an interest rate of 0.1% based on the rate available on a 1-year constant

22  maturity Treasury for the week ending September 27, 2013, Ms. Munoz seeks

23  prejudgment interest pursuant to USERRA § 4323(d)(3) in the amount of

24  approximately $56.  An award of damages for the 10% IRS penalty, 401(k) loss, and

25  prejudgment interest will incur adverse taxes in the amount of approximately $2875.

26      Ms. Munoz seeks liquidated damages pursuant to USERRA § 4323(d)(1)(B).

27  Defendants' handbook policies, which guaranteed reemployment of returning

28  servicemembers, coupled with Defendants' express USERRA concerns over Ms.

Munoz's termination, knowledge of her military obligations and non-military LWOP hours, and failure to seek legal consultation constitute sufficient evidence for a reasonable jury to find that Defendants acted with reckless disregard of their USERRA obligations.  Ms. Munoz also seeks recovery of reasonable attorney fees, expert witness fees, and other litigation expenses pursuant to USERRA § 4323(h)(2).

The following is a summary of the monetary relief sought by Plaintiff excluding liquidated damages and fees and expenses:

| | |
|---|---|
| Back Pay for Lost Wages | $9,740 |
| 401(k) Retirement Loss | $9,942 |
| 10% Penalty on Early 401(k) Withdrawal | $916 |
| Prejudgment Interest (through June 21, 2016) | $56 |
| Total Loss Before Adverse Taxes | $20,654 |
| Adverse Taxes on Lump Sum Award | $2,875 |
| Total Loss With Adverse Taxes | **$23,529** |

## IV.  ABANDONED ISSUES

None of the issues raised by Plaintiff in her pleadings has been abandoned.

## V.  EXHIBITS

Plaintiff expects to offer at trial the exhibits listed in Exhibit A hereto, pursuant to Local Rule 16.1(f)(2)(c).

## VI.  WITNESSES

**A.    Witnesses Whom Plaintiff Expects to Call at Trial**

      **1.    Fact Witnesses In Person**

Plaintiff expects to call the following fact witnesses in person at trial: [3]

Preston Carpenter

---

[3] Plaintiff has issued subpoenas to the persons listed below and expects to call them live; however, to the extent that they are not available, Plaintiff will designate portions of their depositions.

15818 Caminito Aire Puro
San Diego, CA 92128
(619) 962-2335

Colby Jones
1435 30th Street
San Diego, CA 92102
(858) 705-5569

Kristen Matella
3369 Felton Street
San Diego, CA 92104
(757) 619-3941

Vanessa Munoz
46 E. Palomar Dr.
Chula Vista, CA 91911
(619) 203-6451

Elham Ramirez
2570 Pico Place
San Diego, CA 92109
(210) 262-2563

## 2.    Fact Witnesses By Deposition[4]

Plaintiff expects to call the following fact witnesses by deposition at trial:[5]

Maribel Contreras
6190 Edsall Road, Unit 172
Alexandria, VA 22304
(703) 370-9880

Judy Draper
1D Warthens Way
Emmitsburg, MD 21727

Marcia Euwema
7197 Duck Court
Springfield, VA 22152
(703) 912-4359

---

[4] Attached hereto as Exhibit B is Plaintiff's trial deposition designations pursuant to Fed. R. Civ. P. 23(a)(3).

[5] Plaintiff has provided deposition designations for Maribel Contreras, Judy Draper, Marcia Euwema, Coran Traywick and Marne Valeros.  To the extent that any of them – in particular Ms. Euwema or Ms. Valeros who are current STGi employees – appear for trial, Plaintiff reserves the right to call them live.

Coran Traywick
9528 Gold Stage Road
San Antonio, TX 78254
(210) 262-2563

Marne Valeros[6]
5 Ferguson Court
Palm Coast, FL  32137
(619) 962-2336

### 3.    Expert Witnesses

Plaintiff expects to call the following expert witnesses at trial:

Erick C. West
10220 N. Nevada Street, Suite 110
Spokane, WA 99218
(509) 747-5850

Erick West is Plaintiff's damages expert.   Mr. West is an economist and the President of West Economics, Inc.   He has both a Bachelors and a Masters Degree in Economics from Washington State University and has worked as an Economist for more than 10 years.

Mr. West will offer the opinions set forth in his expert report, specifically related to the lost wages and benefits that Ms. Munoz incurred as a result of her wrongful discharge and Defendants' failure to reemploy her after she returned from military leave.

### B.    Witnesses Whom Plaintiffs May Call at Trial

### 1.    Plaintiff may call the following Fact Witnesses:

Edna Collins
15611 Mountain Valley Pl.
Lakeside, CA 92040

Norma Donahue
10231 Kotzebue St.
San Antonio, TX 78217
(210) 366-0033

---

[6] Plaintiff understands from Defendants that Ms. Valeros no longer lives in San Diego, but is still a current employee of STGi; as a result, she may still regularly transact business in this District and therefore be within the subpoena power of this Court.  If she is not available to be called live, Plaintiff has designated her deposition.

28

1

2        Rosie Franks
         10231 Kotzebue St.
3        San Antonio, TX 78217
         (210) 366-0033

4        Jerred Green
         10231 Kotzebue St.
5        San Antonio, TX 78217
         (210) 366-0033

6

7        Plaintiff also hereby identifies as potential trial witnesses any witnesses

8    identified by Defendants.  Plaintiff also reserves the right to call witnesses for

9    establishing the authenticity or admissibility of documents.

10   Dated:  April 25, 2016          Respectfully submitted,

11

12

13                                   By: _____

14                                   R. JOSEPH BARTON, CA Bar No. 212340
                                     Email:  jbarton@cohenmilstein.com
15                                   COHEN MILSTEIN SELLERS & TOLL PLLC

16                                   1100 New York Avenue, NW

                                     West Tower Suite 500
17                                   Washington, DC 20005-3955

18                                   Tel:  (202) 408-4600
                                     Fax:  (202) 408-4699
19

20                                   MATTHEW Z. CROTTY
                                     Email:  matt@crottyandson.com
21                                   CROTTY & SON LAW FIRM, PLLC

22                                   905 W. Riverside Ave.

                                     Suite 409
23                                   Spokane, WA 99201

                                     Telephone:  (509) 850-7011
24

25                                   *Attorneys for Plaintiff*

26

27

28

                                         29

**PROOF OF SERVICE**

I declare that I am over the age of eighteen (18) and not a party to this action.  My business address is 1100 New York Ave., NW, Ste 500, Washington, DC 20005.  On April 25, 2016, I served the following document(s): **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on the interested parties in this action by electronically serving the above document(s) via the Court's CM/ECF filing system.  I declare under penalty of perjury under the laws of the United States that the above is true and correct.

_____
Georgette Jones